May it please the court, I'm Alex Costin, Assistant Attorney General representing Washington Department of Corrections. Respondent respectfully requests this court to reverse the district court's grant of the habeas corpus writ because the district court had no subject matter jurisdiction to address Mr. Rishor's second habeas corpus petition. State court's adjudication of the waiver of counsel claim was not contrary to the Supreme Court's ruling that Mr. Rishor waived the double jeopardy claim by intelligently and knowingly pleading guilty. In this case, district court ignored the substance of Mr. Rishor's post-judgment motion because Mr. Rishor... Well, counsel, can I just stop you for a minute? As I understand it, maybe this is a question for Mr. Maybrown, but as I understand it, he was in custody on the assault two conviction, right? Yes, Your Honor. So, there couldn't be a double jeopardy claim from custody on that charge. Yes, Your Honor, that's... First degree assault charge was dismissed. Yes, Your Honor. So, I guess maybe it is a question for Mr. Maybrown. I'm not sure I even see a double jeopardy claim extant at this point. Well, actually, we're prepared to address that because that is one of the errors that we believe the district court made in this case. So, what happened here is that on remand, Mr. Rishor was initially erroneously charged with first degree assault. However, the charge was amended before he pled guilty. Mr. Rishor knowingly and voluntarily pled guilty to second degree assault. But he's saying that if he had known that he wasn't facing a first degree assault, he would have gone to trial. He didn't really have anything to lose, right? This was not the issue, Your Honor, before the court. The only issue that the court addressed was the double jeopardy. And we believe it's not appropriate for the district court to bolster its erroneous determination that double jeopardy occurred by pure speculation that Mr. Rishor did not know about the charge. Well, there was a first amended complaint or indictment charging document that charged him with first degree. Yes, Your Honor, it was. But then Mr. Rishor, who is very intelligent, very legally savvy, and never shies away from the argument with the court, at the guilty plea, repeatedly explained to the court that he was pleading guilty to the second degree assault. He said that, I know the charge, I know the sentence I'm going to get, and he actually repeatedly told the court why he's doing that. He said, I'm doing that because I don't want my daughter to be here, and I don't want weapons enhancement. All right. So why haven't you given us a transcript of that November 6th hearing, the full transcript, November 2nd hearing, the full transcript, so that we can confirm that he did understand that he wasn't facing Assault 1? I'm not sure what hearing you're talking about, Your Honor. Are you talking about the guilty plea hearing or the... No, it's earlier, the arraignment. What would have been the arraignment, which never happened? I thought his standby counsel waived arraignment. Yes, Your Honor. Well, yes, but he was brought before the court and there was this... The judge wasn't sure what the charge was, because it was on a remand and it was a different judge from the trial judge. Well, actually, Your Honor... I think that that's what... I'm not sure. I'll ask Mr. Reischer, but that was what he is saying, that that November 2nd hearing is where he said something about being facing the Assault 1 charge. That was his understanding. No, Your Honor. I think there was no confusion about the charge that he was facing, because we admit that it was erroneous to charge him with a first degree assault. However, it was obviously a clerical error, because the records that we provide show that at the very first hearing on remand, the prosecutor says he is here on the second degree assault. What date was that? That was, I believe... This is Respondent ER-169. I think it's November 2nd, but it's 169. So, the district court made an error that in the absence of any United States Supreme Court precedent, it concluded that there was a double jeopardy violation, because the state erroneously charged Mr. Reischer with a first degree assault. However, as was stated, Mr. Reischer was guilty to second degree assault. He knowingly and voluntarily did so. He explained to the court repeatedly why he was doing that. When the court asked him whether he was pleading guilty knowingly and voluntarily, he said yes. He said, don't read me the charges and don't read me the information. Mr. Reischer seems to be reasonably sophisticated. After all, he represented himself at trial and the jury hung on the first time around. Yes, Your Honor. But could we really expect a pro se criminal defendant to understand that he could have demanded that the state proceed to trial on the first degree assault, wait for the jury to be impaneled, and then move to dismiss based on double jeopardy? Well, again, Mr. Reischer... That's what a sophisticated defense attorney would do, isn't it? Yes, Your Honor. But Mr. Reischer, as I said, he is very intelligent, very legally savvy.  If he had any issues, as the records on remand that we provide show, he often engaged in very lengthy and sophisticated colloquy with the court. If he had any questions or problems with any of the court's rulings, he made sure he raised that. But this was after the charge was amended, what you're describing. No, Your Honor. That was in between. So the case was remanded. He was initially erroneously charged with first degree assault. There were a couple of hearings with the same judge who presided over his first trial and other judges as well. Were there two hearings in court before the charge was, if you will, reduced to second degree? I believe there were even more. There was at least two. At either of those, did the district court explain to the pro se plaintiff that he could demand to go to trial on the charge? No, Your Honor, I don't believe so. But that was not the issue, the federal habeas issue that was raised. As I understand it, the first hearing was at Mr. Reshore's request to appoint standby counsel. And the court ultimately appointed the lawyer that he wanted. Yes, Your Honor. And Mr. Reshore argued in his brief that the record is silent and there was no records as to why the Superior Court on Remand proceeded as if he was represented by counsel. But that's actually not true. So the record is not silent. There was a lengthy colloquy in 2004 in his original trial. And on remand, Mr. Reshore, as Your Honor noted, went as far as demand the prosecutor put him on the record to say, Court, I'm pro se. I don't need anyone. And he repeatedly said that I only need standby counsel to, quote, unquote, file stuff for me because I cannot do it from prison. And he said, I can handle arraignments. I can handle everything on my own. And he actually went as far as draft his own motion appointing standby counsel that he wished. And this motion was granted by the Superior Court. I have a question. Explain to me what the plea deal was. That is, what did Mr. Reshore get out of pleading guilty rather than going to trial and being convicted other than his daughter didn't have to come to court? He got weapons enhancement off. And that was, I believe, 12 or 14 months. So he got a lower sentence. He got a lower sentence. And he explained at the hearing that that's what I'm getting. I'm getting 84 months. And I know I'm getting weapons enhancement off my sentence. And that's why I'm pleading guilty. So he would have been told, we can assume by the prosecutor, that if you go forward, we'll file a second amendment that says second degree with weapons enhancement. Or maybe he was told first and second degree with weapons enhancement. We don't have anything in the record, do we, that tells us what those plea negotiations were? We don't, Your Honor. But Mr. Reshore signed a guilty plea without reservation. And he pled guilty without reservation. Again, he's a very sophisticated, very outspoken pro se petitioner. If he said that, well, somehow somebody is twisting my arm and forcing me to plead guilty, he would have said that. Because he, as I said, he repeatedly engaged in very sophisticated legal discussion with the court. He was even commended by several judges on that. You wanted to save four minutes? Yes, Your Honor. Good morning, Mr. Mabrow. Good morning again. Good morning. May it please the court. My name is Todd Mabrow, and I'm the attorney for the petitioner, Kurt Reshore, here before the court. And I was, very briefly, for the last few moments of the habeas corpus case, his counsel. But for the lion's share of the habeas corpus case, he was representing himself. And although I would say that he did a commendable job for a pro se litigant, he is not sophisticated. You can review the pleadings yourself. You can look at the words he used. You can look at the concepts he tried to describe. You can look at that. He was not educated. He was not sophisticated. And he was not that intelligent, sad to say. But he did his best. In any event, I want to- Well, I guess the issue for the court is, it looked to me like Judge Murrah went through a pretty standard, verita inquiry when he first asked to represent himself. And then as, I guess, has been represented, he represented himself through a successful appeal and reversal, and then asked to continue pro se appearance, but requested the assistance of standby counsel. The record seems to support all that. Are you suggesting it does not? It doesn't. I can talk about the FREDA issue, but let me just give you some more facts so you can understand. He actually was represented on appeal. He had counsel in the first appeal. That wasn't a pro se appeal. So the suggestion that he was always representing himself in the state court and always wanted to is not true. He had counsel. In the first trial, he didn't want to be represented by the public defender's office. So given no other option, he went pro se. And he represented himself at trial. And for whatever reason, he wasn't convicted of the top count of assault one. And he was acquitted of two counts of assault two. Then he was assigned counsel on appeal. He had counsel on appeal. He came back. And some of the confusion, Your Honor, is because the dates of the transcripts are the same date for two different hearings. And I didn't create these transcripts, and I wasn't even involved. But, for example, on November 2, you'll find two different court hearings with Mr. Reshor where he says over and over again, what am I charged with? Tell me what I'm charged with. He never affirmatively says, I want to go pro se. He doesn't say that. Well, I thought that the record showed that the first hearing was set up at his request. For an arraignment to find out what he was charged with. To appoint standby counsel because he was having problems with. See, the problem is there's two hearings on the same date. I think that the first hearing actually was he was asking for an arraignment. And the judge said, I can't find the information. But I assume, I guess, you're charged with assault two. That's what happens. But I don't have an arraignment. I don't have the information. And it gets even more confusing because, as you see, he asks the judge to sign an order. And they say, well, I wasn't the judge who heard the last hearing. So we have to put it in that judge's box. And he'll get another hearing date scheduled. There was an order appointing Mr. Frye. Frye or Frye, whatever the name was. The lawyer that he wanted as standby counsel. Because he was having problems filing his motions from the jail. Right? And it's true that he said, Mr. Frye, who had represented me before, will agree to represent me again. He said very clearly on the record, I don't want the public to offend her. He said, I'm pro se. Well, I agree he came back and he said, I'm here pro se. Nobody told him he was entitled to counsel. But I don't want to argue the Frye issue right now. I want to focus on the double jeopardy issue. Because to explain to the court what happened is, he asked what he was charged with. He was repeatedly given conflicting information. The judge said, I can't find the information. I think it's assault in the second degree. Then later, finally, the prosecutor filed an amended information. That's what he called it. Assault in the first degree. So, he says inconsistent things. He says, I never even knew. I never received that first amendment. And then he says, I wouldn't have pleaded guilty if I'd known I was not charged with assault first. Well, I think what he says, and there's a declaration from his standby counsel who explains, I told him what he was facing. He was charged with assault in the first degree. I gave him the standard ranges. It was about 20 years more than he would be facing on assault two. What's your best case for the idea that simply repeating the first degree charge in and of itself is a double jeopardy violation? It's this court's decision in Brazil. This court said that Washington, and that was an assault one, assault two case actually. This court reversed, and it's a habeas case, and found that it was contrary to clearly established law. Green and Price in those cases. And in Brazil, they said Washington's silence doctrine. In that case, did the prosecutor amend the charge? What I don't know about Brazil. The answer is no. I don't think so, but I think what happened was there was silence. It came back, and he faced the same charge that the jury was silent on. This court reversed and said that's a double jeopardy violation. What's their silence? Under constitutional law, isn't it correct that if any time prior to the impaneling of a jury, the state had amended the charge to second degree, there would be no double jeopardy argument? Well, I agree that if the state had said what Mr. Costin said, we made a mistake. We shouldn't have filed that. We don't mean to use it to try to gain an advantage in plea negotiations. But that's not what happened here. Well, but the problem that we're having is that jeopardy doesn't attach until the jury is impaneled. No, that's not true. There's cases that say charging them, hauling you into court. I'll cite cases, for example. I'll cite the Meta case where what happened was just the charge itself, bringing the person into court and facing a charge that they've been... He's before us on a writ of habeas corpus and the basis for his conviction is a second degree assault charge. So that can be a double jeopardy violation. Well, I strongly disagree. It can be if the charge that they used to basically coerce the plea... Assuming that Brazell is distinguishable, what is your best case for this argument? Because I don't see it. It would be either Blackledge or Manna. These are two cases where the court said... What's the other one? Manna versus New York. And they're both cited by the district court judge where she makes clear that the fact that the illegal charge was part of the plea bargaining process and was used essentially vindictively. And that's what... At the plea, that the reason he was pleading guilty was he didn't want to subject his daughter to another trial and he was getting the weapons enhancement dropped so that he was looking at a standard sentencing range with a low end of 84 months, which is what he got. Actually, he received a higher sentence than that because of the other charge. So he didn't get 84 months. But he did get a lower charge, did he not? Without the weapon enhancement. The only thing that did happen, which I would agree, is they did drop the weapons enhancement. Which would have subjected him to higher punishment. 12 months. Mandatory time. So the answer is yes. It's actually 12 months mandatory time over and above. It's not part of the standard range is what I was trying to say. Can I follow up on the double jeopardy issue just for a second? Sure. If the state had proceeded to the opening of a trial, this is hypothetical, on first degree, and either Mr. Rischel or with the help of the standby counsel had stood up and said, I move to dismiss this charge on the grounds that my client is being held more than once in jeopardy under violating the Fifth Amendment of the United States Constitution. And the court had said, you are right, you are correct. Those charges are dismissed. And you couldn't refile. And a week later, the state charges your client with second degree. What's wrong with that? I think under Washington's rules, you couldn't because of joinder principles. There's actually mandatory joinder. But absent that consideration. I've never faced a situation like that. So I haven't pieced out all what the legal arguments would be. I would argue that, as in Blackledge and the other cases, bringing the person into court and repeatedly charging them based on the same conduct would be a double jeopardy. Even though he said he wasn't even aware of it. But let me ask you this. Isn't the heart of the constitutional violation found by Judge Beckham that he should have received a second Feretta hearing? Well, that's the first claim. Again, can you start with the yes or no? That's the heart of the constitutional violation. On the Feretta side, but not on the double jeopardy side. Yes, I agree. Is there a Supreme Court case that says where an individual has been previously charged given an adequate Feretta hearing that they're entitled to a second Feretta hearing? There's not a Supreme Court case that says that. And I've conceded as much before. What the judge found is that the state court, under those circumstances, needs to at least advise the person of his right to counsel. And there has to be some waiver on the record. But I can see that there's not a U.S. Supreme Court case that's dealt with a remand issue like that. There are a couple of district court cases where there have been habeas grants because of similar problems, but not a Supreme Court case. But in the double jeopardy context, I think what happened is the state was allowed to use all of its authority and illegally charge him with assault in the first degree to coerce a plea. And he used terms like vindictiveness and coercion. And that's exactly what happened in Blackledge. Blackledge is a case where a person was convicted of misdemeanor assault. What evidence do we have of vindictiveness and coercion here based on what the defendant told the judge during the plea colloquy? Well, I don't think that's a fair summary of the way I saw the disposition. Because, of course, his lawyer gave an affidavit and said that I told him what he was facing. After the fact. Well, he did. But what I would expect as a practitioner, I've seen this all the time, you're seeking some mercy from the court. And you're showing some responsibility and accepting responsibility and say, I want to accept responsibility for this. And that's what he said. Immediately after he was informed that it was illegal to charge him with first degree, he spent the last, I don't know how many years, 10 years trying to undo his plea. And I think that, although he used those words, I think it's a gross mischaracterization to say he knew beforehand. Isn't the real concern here, he doesn't want to be tagged with violent felonies because they're strikes. That's why he's trying to get this thing set aside. Well, I can't speak to that, but I think it's more complicated. He's currently in federal custody. Well, I think that it's because of, and I didn't represent him on the federal matter, but I think it would impact what sentence he should have received in the federal matter. It's going to impact a lot of things. Not only his sentence, it'll probably impact his eligibility for release and so on. Well, and I think he would need to be potentially re-sentenced in the federal matter, although, as I said, I'm not representing him on that. And, of course, he filed this while he was still in state custody, but now moved to federal custody. And that was disputed early in the litigation as well. But the point is the same point, which is that he was unfairly charged with the first degree. And I think that it was exactly what a trained defense attorney would do, is say, take it to some point in the trial, once jeopardy attaches, and then make the motion. But in Blackledge and in Manna, these are plea cases. These are not cases where you went to trial. And the court said, even after you pled guilty, you could go to the court and say, they illegally charged me with these offenses. How much time had he served by the time the case got remanded to the Whatcom County Superior Court? Well, I'll do math. 2004 trial, I don't know the date that the judgment was rendered, but I think he was in custody. So he served at least a few years? Right. Because he comes back November 2006. Yeah, and I'm assuming he's going to get credit for all that time on the sentence that was ultimately imposed. You do get credit. I don't... No, I don't think... You don't get credit on the... Excuse me. You don't get any good time on the mandatory time. So I could do math in my head and figure out how many days off he would get, depending on the offenses. But I guess what I'm trying to see is, the plea makes a lot of sense to me, from the defendant's standpoint. I disagree. I don't credit the truthfulness of the statements that he made to the Superior Court judge when the Superior Court judge was trying to determine whether the plea was voluntary. I strongly disagree. I think the only benefit he got from the plea is potentially he could have saved 12 months. That was all. As opposed to facing 20 years. But if he's already served, let's say, 60... But he hadn't. He had only served a few years. He wasn't 60 months. You and I can disagree on what the record shows, but to me, that's a... The sentence was 102 months, right? Right. So even if he had gone to trial and been convicted, you're saying he would have gotten 12 plus 84? Yeah, but I think the way it would have run is that he would have gotten an additional 12 because that's mandatory time. You can't run concurrent with the 102. Oh, 12 plus 102. The problem is that was a gun count. I wasn't there. I think there might be a double jeopardy violation to run the 12 months concurrent with 102 months. But this is all... It's not part of the record. It wasn't argued by Mr. Rescher. So I think that maybe he wouldn't have gotten any benefit, like this much benefit, by pleading guilty. Counsel, your time has expired. Okay. All right. Thank you. Good job. Just a couple of issues to clarify. I believe there was a... I think the district court was confused about the current status of Mr. Rescher. He is serving a lengthy federal... He was convicted on federal charge and he's in federal penitentiary. So he won't be released until 2020. So that's one question. Another issue was that I believe opposing counsel was saying that Brazel was on point in terms of double jeopardy violation. Brazel is not on point because Mr. Rescher was not convicted of first degree assault, as we explained. At length, he was initially charged. He was recharged with second degree assault. He voluntarily pled guilty. He explained why he was doing that. And in terms of double jeopardy violation claim, the respondent's position is that the claim was never properly exhausted to begin with. So the district court could not have addressed it in the first place. He never... Mr. Rescher clearly knew how to present claims as federal constitutional violations. As his pleadings in the state courts indicate, he properly raised federal constitutional violation claims by citing provisions of the federal constitution. He was citing to the federal case law. But the principles are the same in Washington and the United States, right? Of double jeopardy. And he cited double jeopardy cases under Washington. He cited the Washington cases, Your Honor, that were addressing Washington and under this court's precedent of Casey v. Moore, simply citing to the state court addressing the federal claim is not enough to apprise the state court of the federal nature of the claim. And as Peterson v. Lampert, another case from this circuit shows, it's those... the court should look in context of how these claims were presented. And the context shows that Mr. Reshore, again, clearly knew how to present federal claims. He probably exhausted some of them by citing to the federal constitution, by citing to the federal case law. But he never said this is a double jeopardy violation. And it's really easy. As this court held in Alaska v. in Galvin v. Alaska Department of Corrections, briefing a claim is not like writing a poem, where the is conveyed by allusions and connotations. If Mr. Reshore wanted to raise a federal double jeopardy violation claim, all he had to do is say, this violates my federal constitutional right to be free from double jeopardy. Does the court have any questions for me? When do you say that Mr. Reshore first learned that he was charged with first degree assault in the first amended information? When did he learn about that? It's not clear, Your Honor. I can't exactly pinpoint the date. But again, Mr. Reshore, being the smart and sophisticated petitioner that he is, could have raised it and he could have said, well, he actually did, but the fact remains that he was correctly recharged before he pled guilty to the second degree assault. And he is in custody for federal habeas corpus purposes on second degree assault. So you can't really say that at any time during those proceedings he was or was not We know he wasn't arraigned, but even confronted with this information. Well, there was a discussion during one of the pleadings where the court and I see I'm out of time, but if I could finish answering. Where the court basically was going through the file and said well, Mr. Reshore, it looks like you've been charged with second degree assault but they couldn't find the information. And then I thought I read that his standby counsel waived arraignment. Yes. Thank you, counsel. The case just argued is submitted and we will stand adjourned for the week.
judges: Hawkins, Tallman, Lefkow